## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
#### ORLANDO DIVISION

HEALTH FIRST, INC.,

                Plaintiff,

v.                                    Case No:   6:11-cv-715-Orl-41KRS

RICHARD HYNES,

                Defendant.

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

      This cause came on for consideration without oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S RENEWED MOTION TO DETERMINE AMOUNT AND AWARD [OF] REASONABLE ATTORNEY'S FEES AND NON-TAXABLE COSTS (Doc. No. 217)** |
| **FILED:** | **February 24, 2016** |

## I.    BACKGROUND.

      The present litigation began on April 28, 2011, when Plaintiff, Health First, Inc. ("Health First"), represented by counsel with Holland & Knight, filed a three-count complaint against Defendant, Richard A. Hynes, M.D. ("Dr. Hynes").   Health First alleged in Count One that Dr. Hynes violated the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, in Count Two that Dr. Hynes violated the Stored Communications Act ("SCA"), 18 U.S.C. § 2701, *et seq.*, and in Count Three that Dr. Hynes breached a confidentiality agreement.   Doc. No. 1.   Dr. Hynes filed a motion to dismiss the claims, Doc. No. 11, to which Health First responded, Doc. No. 14.   The

Court denied the motion.   Doc. No. 20.   Thereafter, Dr. Hynes answered the complaint, denying almost all of the allegations in the complaint and asserting affirmative defenses.   Doc. Nos. 28, 45.

Thereafter, needlessly contentious discovery ensued.   For example, Dr. Hynes filed a motion for sanctions arising from alleged spoliation of evidence, Doc. No. 103, which motion was denied, Doc. No. 147.   Health First filed three motions to compel and a motion for reconsideration of the denial of a motion to compel, all of which were denied.   Doc. Nos. 59, 65, 70, 72, 83, 84, 87, 94.   Health First also repeatedly insisted that this Court must resolve disputes regarding privileges and protections that applied to information it inadvertently produced to counsel for Dr. Hynes even though, the Court eventually learned, a state court judge presiding over other proceedings had already held a multi-day hearing on the issue of privileges, protection and disqualification of Health First's counsel.[1]   *See, e.g.,* Doc. Nos. 115, 123, 125, 126.   Once this Court learned of the state court proceedings, it stayed the present case pending rulings in state court on the privilege, protection and disqualification issues.   Doc. No. 123.   The presiding judge in the state court proceedings resolved the issues of privileges and protections and denied the motion to disqualify counsel for Health First. Doc. Nos. 129, 132, 133, 137.   Nevertheless, Health First continued to assert that this Court must resolve the privileges and protections disputes, and its motions were denied.[2]   Doc. Nos. 146, 152,

---

[1] The background of the state court litigation was explained as follows:

Dr. Hynes and Health First are also parties to four other lawsuits pending in state court in Brevard County, Florida.   Dr. Hynes has moved to disqualify Holland & Knight as counsel in three of those four other state court lawsuits . . . .   The grounds stated in the motions to disqualify in state court were substantially the same as those that form the basis for the Motion for Disqualification in this Court.

During the period from September 19, 2012, through October 1, 2012, Judge Charles Holcomb conducted an evidentiary hearing on the motion to disqualify in [one of the state court lawsuits].   Testimony was taken from a total of 14 witnesses and 4,000 pages of exhibits were introduced over the course of 6-days of taking evidence.

Doc. No. 125, at 2-3.

[2] I granted a motion for reconsideration in part only to replace an order denying one of Health First's

153, 155, 157.   After the state court denied the motion to disqualify counsel for Health First, Dr. Hynes withdrew the motion to disqualify filed in this Court.   Doc. No. 141.

Health First filed a motion for partial summary judgment on liability.   Doc. No. 74.   Dr. Hynes also filed a motion for summary judgment, and a motion to accept the belated filing of the motion for summary judgment.   Doc. Nos. 81, 82.   Before the motions for summary judgment were resolved, counsel for the parties prepared and filed their Joint Pretrial Stipulation and related documents.   Doc. No. 161.   Health First contended that it was entitled to recover its actual damages under the CFAA and the SCA and that it was also entitled to at least statutory damages of $1,000 per violation of the SCA.   *Id.* at 8.

On September 17, 2014, the Court granted Health First's motion for summary judgment in part and denied Dr. Hynes' motion for summary judgment.   Doc. No. 164.   As to the SCA claim, the Court found that Dr. Hynes admitted in a deposition taken on September 24, 2009, that he had forwarded email from an account of Dr. Segina to himself and Dr. Datta.   Doc. No. 164, at 4, 21. The Court found that Health First had established that Dr. Hynes was liable on the SCA and breach of confidentiality agreement claims, leaving the issue of liability under the CFAA and damages as questions for the factfinder.   *Id.* at 22.

The Court held a bench trial on October 21 and 22, 2014.   Doc. Nos. 209, 210.   On November 3, 2014, the Court entered its order following the bench trial.   Doc. No. 179.   The Court found that Health First had established Dr. Hynes' liability for violation of the CFAA.   It awarded damages for violation of the CFAA and statutory damages for violation of the SCA, and it declined to award attorney's fees and costs under the SCA, finding that the award of damages was adequate deterrence.   *Id.* at 11-12.

---

motions with a more detailed order following a hearing.   Doc. No. 157.

Thereafter, following an evidentiary hearing, the Court granted in part Health First's motion to alter or amend the judgment and to tax costs. Doc. No. 192. In that order, the Court vacated its earlier determination that Health First was not entitled to an award of attorneys' fees under the SCA. *Id.* at 5. However, the Court renewed its earlier finding that an award of attorneys' fees and non-taxable costs would have "very little deterrent effect." *Id.* at 6. The Court found that other considerations favored an award of reasonable attorneys' fees and non-taxable costs based on Dr. Hynes' intentional misconduct that violated the SCA and his general recalcitrance, which caused Health First to bring this case to enforce its rights. Therefore, the Court determined that Health First was "entitled to attorneys' fees and non-taxable costs in a reasonable amount to be determined." *Id.* at 7.

Dr. Hynes appealed the Court's final judgment, and the United States Court of Appeals for the Eleventh Circuit affirmed the Court's judgment. Doc. Nos. 215, 216.[3] Thereafter, Health First filed the above-referenced motion supported by the Declaration of Jerome W. Hoffman and supporting exhibits. Doc. No. 217, 217-1, 218, 218-1, 218-2, 218-3, 218-4. Dr. Hynes filed a response to the motion supported by the Affidavit of David S. Oliver. Doc. Nos. 219, 231.

## II.   ANALYSIS.

The only statute authorizing an award of attorneys' fees applicable in this case is the SCA, which provides that in the case of a successful civil action to enforce liability, "the court may assess the costs of the action, together with reasonable attorney fees determined by the court." 18 U.S.C. § 2707(c). The SCA also provides that appropriate relief in a civil action under the SCA includes "other litigation costs reasonably incurred." *Id.* § 2707(b)(3). The award of attorney's fees and

---

[3] The Eleventh Circuit transferred the motion for appellate attorney's fees filed by Health First to this Court for resolution. Doc. Nos. 223, 224. I will address that motion in a separate Report and Recommendation.

other litigation costs is discretionary.  *Vista Mktg., LLC v. Burkett*, 812 F.3d 954, 977 (11th Cir. 2016).

The Court has determined that Health First is entitled to attorneys' fees and non-taxable costs in a reasonable amount.[4]  I will discuss the award of attorneys' fees first, followed by a discussion of an award of non-taxable costs.

A.    *Attorneys' Fees*.

Under a federal fee-shifting statute, attorneys' fees are calculated by determining a lodestar amount and then, if necessary, adjusting that amount to ensure that the fee amount is reasonable. *Cheng v. Romo*, No. 11-10007-DJC, 2014 WL 882796, at *1 (D. Mass. Mar. 6, 2014) (citing *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564-65 (1986)).  The lodestar fee is calculated by multiplying the reasonable hourly rates of counsel by the number of hours reasonably expended on the litigation.  The party seeking an award of attorney's fees bears the burden of establishing and documenting the hours expended and the hourly rates charged.  *Id.*

1.    **Hourly Rates**.

In this case, Health First seeks attorneys' fees for the following legal professionals at the hourly rates specified below:

| | |
|---|---|
| Jerome W. Hoffman, Esq. | $385.00 per hour |
| Dominic C. MacKenzie, Esq. | $385.00 per hour |
| David C. Borucke, Esq. | $375.00 per hour |
| Mia L. McKown, Esq. | $355.00 per hour |
| Nathan A. Adams, IV, Esq. | $345.00 per hour |

---

[4] Because the Court has resolved the entitlement issue, I will not address Dr. Hynes's objections based on failure to determine during the bench trial the amount of attorneys' fees to be paid as an element of damages.

| | |
|---|---|
| Matthew H. Mears, Esq. | $255.00 per hour |
| Kevin W. Cox, Esq. | $255.00 per hour |
| Linda Edgar, Paralegal | $225.00 per hour |
| Georgianna Hatch, Paralegal | $165.00 per hour |

Doc. No. 217-1, at 5-6.   During the litigation of this case, Attorneys Hoffman, MacKenzie, Borucke, McKown and Adams were partners at Holland & Knight.   *Id.* at 5   Attorneys Hoffman, MacKenzie, Borucke and McKown each had more than twenty years of experience, and Attorney Adams had almost twenty years of experience.   *Id.*   Attorneys Mears and Cox were associates with Holland & Knight.   *Id.*   Attorney Mears graduated from law school in 2004, and Attorney Cox graduated from law school in 2006.   *Id*. at 5-6.   Paralegal Edgar has more than eleven years of experience in litigation support/eDiscovery services.   Doc. No. 218-2, at 3.   Paralegal Hatch has more than sixteen years of experience working as a paralegal in complex litigation matters.   *Id.*

Frank Bedill, Esq., the fee expert for Health First, opined that these hourly rates are reasonable, albeit noting that the rate sought for Paralegal Edgar is "slightly on the high side."   Doc. No. 217-1, at 5-6.   Dr. Hynes' fee expert, David S. Oliver, Esq., does not dispute the hourly rates sought except for the rate for Paralegal Edgar.   Doc. No. 231, at 9.   Attorney Oliver opined that $175.00 per hour is reasonable for Paralegal Edgar's compensable work.   *Id.* at 10.

Accordingly, I recommend in the absence of objection that the Court find that the hourly rates sought for compensable work of every professional except Paralegal Edgar is reasonable.   I further recommend that the Court find that $225.00 per hour exceeds the reasonable hourly rate for the work of a paralegal in central Florida, particularly in light of the lesser hourly rate sought for the work of Paralegal Hatch, and reduce Paralegal Edgar's hourly rate to $175.00.

**2.      Reasonable Number of Hours**.

Health First contends that it is entitled to recover fees incurred "as a result of litigation strategies pursued by Dr. Hynes that were particularly unnecessary and . . . the fees associated with pretrial preparation and trial itself."  Doc. No. 217, at 4.  While it does not seek fees for all the work its counsel performed in this case, Health First has not shown that all of the work for which it does seek fees was necessary for the litigation of the SCA claim, which is the only claim for which an award of fees is authorized.  Dr. Hynes objects to the fee request due to this lack of segregation of the fee request to work performed on the SCA claim.  Doc. No. 231, at 8, 10.  I will address this objection below.

Dr. Hynes also objects to the number of professionals and the amount of time worked on a case in which the "SCA claim was ripe for adjudication on Summary Judgment the day this lawsuit was filed."  *Id.* at 12.  While the record references an admission Dr. Hynes made before this case was filed that he accessed Dr. Segina's emails and forwarded them, Dr. Hynes was entitled to discovery and to take efforts to defend himself before the Court could resolve a summary judgment motion.  *See, e.g.*, Doc. No. 103, at 4 ("HYNES has the right to make a determination for himself whether or not there is additional information that proves his position and allows HYNES to defend himself against the allegations contained within the Complaint.").  Therefore, to the extent that work performed was necessitated by discovery requests made, motions or other papers served or filed by Dr. Hynes, and preparation and trial of the case, an award of attorneys' fees is appropriate.

Dr. Hynes also objects generally to the work performed as (1) excessive for the tasks performed, (2) because each time entry did not indicate the amount of time performed for each task in a single time entry, and (3) because the work was often duplicative or redundant.  Doc. No. 231, at 15-16.  I will also address these objections below.

Finally, while Health First identified categories of work for which it seeks fees, *see, e.g.*, Doc. No. 218-1, at 3, it did not favor the Court with a breakdown of the time entries showing the tasks performed in each category by each professional.   I have conducted a page-by-page, line-by-line review of the time sheets submitted by Health First.   Doc. No. 218-3.   I have endeavored to capture all of the work performed in each category within the time periods identified by Health First to the extent that work in each category can be determined from the time entries.   Rather than detail each time entry in the voluminous time sheets, I have calculated the total hours worked in each category within the time frame requested by Health First (Doc. No. 218-1, at 3) and, except for the time worked responding to a spoliation motion, I have detailed only my reduction of hours when necessary.   *See Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994) (per curiam). Accordingly, I recommend that the Court not entertain objections to time entries that Health First may contend were overlooked in any category due to Health First's failure to breakdown its time entries to correspond to the categories of work for which it seeks fees.

Health First requests fees for the following categories of work:

a.   <u>Work Performed Responding to Dr. Hynes' eDiscovery Requests</u>.

Dr. Hynes served a request for production of documents on Health First in September 2011, which included requests for copies of email, server logs, activity logs, e-discovery logs and network log-in logs/information.   Doc. No. 235-1.   Health First seeks fees in this category for work performed between October 2011 and January 2012.   Doc. No. 218-1, at 3.   Because Health First was required to respond to the discovery request, I recommend that the Court find that Health First reasonably incurred attorneys' fees in the amount of $29,554.00, as follows:

| PROFESSIONAL | HOURS WORKED | HOURLY RATE | FEE |
|---|---|---|---|
| Hoffman | 0.7 | $385.00 | $269.50 |
| McKown | 4.4 | $355.00 | $1,562.00 |
| Cox | 44.6 | $255.00 | $11,373.00 |
| Mears | 51.9 | $255.00 | $13,234.50 |
| Edgar | 17.8 | $175.00 | $3,115.00 |
| TOTAL FEES: | | | $29,554.00 |

Doc. No. 218-3, at 2-84.

I have excluded from the compensable work in this category the following time entries because they relate to work performed by Health First in preparing its computer forensic expert, Adam Sharp, which was not work required in response to Dr. Hynes's eDiscovery request. When various tasks were included in a single time entry without designating the amount of time worked on each task, often referred to as "block billing," I have reduced the work in the exercise of discretion rather than disallowing all of the work. *See Bujanowski v. Kocontes*, No. 8:08-cv-0390-T-33EAJ, 2009 WL 1564263, at *2 (M.D. Fla. Feb. 2, 2009), *adopted by* 2009 WL 1564255 (M.D. Fla. May 1, 2009), *aff'd*, 359 F. App'x 112 (11th Cir. 2009). The time reduced or not allowed in this category is as follows:

| DATE | PROFESSIONAL | HOURS WORKED | TASK PERFORMED |
|---|---|---|---|
| 10/27/11 | Cox | 1.0 | [I]nvestigation and development of list of potential experts if needed, including review of other decisions addressing CFAA and SCA claims and review of other references listing computer forensic experts; sent summary of same to M. Mears [part of a block billing entry]. |
| 11/10/11 | Mears | 0.50 | Prepare email correspondence to Adam Sharp, computer forensic expert, re retaining him as an expert and discussing materials we will be sending |

|  |  |  |  |
|---|---|---|---|
|  |  |  | in preparation for telephone conference [part of a block billing entry]. |
| 11/15/11 | Cox | 0.10 | Review correspondence from K. Nowakowski re collection of computer hard drives for delivery to expert. |
| 11/15/11 | Mears | 1.00 | Gather documents for our computer forensic expert to review with emphasis on identifying e-copies of the documents that Dr. Hynes printed and gave to Levenstein. |
| 11/16/11 | Cox | 0.40 | Review issues and communications with A. Sharp for purposes of providing necessary background information for analysis [part of a block billing entry]. |
| 11/18/11 | Cox | 0.20 | Email to A. Sharp re expert consulting issues and schedule. |
| 11/21/11 | Cox | 0.60 | Multiple communications with A. Sharp and D. Bray re status of collection of hard drives and emails. |
| 11/21/11 | Hoffman | 0.10 | Exchange e-mail correspondence with co-counsel regarding expert analysis of Segina e-mails. |
| 12/01/11 | Cox | 0.20 | Communications re scheduling of call with expert, Retain reseller and Retain vendor. |
| 12/06/11 | Mears | 1.00 | Follow up telephone conference with Adam Sharp, computer forensic expert, re issues to include in his expert report [part of a block billing entry]. |
| 12/07/11 | Mears | 0.20 | [E]mail Adam Sharp re scheduling conferences to discuss his findings [part of a block billing entry]. |
| 12/09/11 | Mears | 1.0 | [A]nalysis of issues that should be included in our expert report [part of a block billing entry]. |

Doc. No. 218-3, at 30, 34-35, 39, 41-42, 45.

> b.   Work Performed Responding to Dr. Hynes' Request to Inspect Health First Computer Servers and Workstations.

On January 24, 2012, counsel for Dr. Hynes requested that his expert be permitted to inspect Health First's and Holmes Regional Medical Center's Windows Domain Controller/Backup Domain Controller (server), the end user workstation that Dr. Hynes allegedly used to obtain access to emails of Dr. Segina, and to randomly inspect other workstations at Holmes Regional Medical Center.   Doc. No. 103-2.   Discussions ensued between counsel for the parties on this issue.   Doc. Nos. 103-3, 103-4, 103-5, 103-6, 103-7, 103-8.   Ultimately, Health First agreed to make the end user workstation allegedly used by Dr. Hynes available for inspection.   Doc. No. 103-8, at 1.

Health First responded that it did not use the Domain Controller technology and that Health First was not willing to allow Dr. Hynes' expert to inspect any of its servers.   *Id.* at 2.

Because Dr. Hynes made these requests for inspections, the time counsel for Health First reasonably worked in responding to these requests is compensable.   Health First seeks reimbursement in this category for work performed in January and February 2012.   Doc. No. 218-1, at 3.   That time is as follows:

| PROFESSIONAL | HOURS WORKED | HOURLY RATE | FEES |
|---|---|---|---|
| Hoffman | 5.3 | $385.00 | $2,040.50 |
| Cox | 10.6 | $255.00 | $2,703.00 |
| Mears | 0.2 | $255.00 | $51.00 |
| **TOTAL FEES:** | | | $4,794.50 |

Doc. No. 218-3, at 63-96.

I have excluded or reduced work in this category that did not relate specifically to inspection of computer equipment or was improperly included in a block billing entry, as follows:

| DATE | PROFESSIONAL | HOURS WORKED | HOURLY RATE | TASK PERFORMED |
|---|---|---|---|---|
| 01/24/12 | McKown | 0.10 | $355.00 | Receive and review letter from A. Whitehead regarding discovery and other case management deadlines. |
| 01/26/12 | Cox | 0.10 | $255.00 | [C]onfer with M. McKown re status of subpoena to Osler [part of a block billing entry]. |
| 01/27/12 | Hoffman | 0.20 | $385.00 | Review incoming Responses to Motion to Compel from BOC and Dr. Datta. |
| 02/02/12 | Cox | 0.30 | $255.00 | [R]eview documents related to Osler production; review details regarding depositions of Health First witnesses [part of a block billing entry]. |

Doc. No. 218-3, at 77-78, 80, 87.   Accordingly, I recommend that the Court find that Health First reasonably incurred $4,794.50 in fees in this category of work.

c.   <u>Work Performed Seeking Discovery from Dr. Hynes' Computer<br>Forensic Expert</u>.

Dr. Hynes designated Kyle Siptroth as its computer forensic expert.   The Joint Pretrial Stipulation reflects that Mr. Siptroth would offer the following opinions:

> The Defendant's expert, Kyle Siptroth, will opine that there is no evidence to indicate that Dr. Hynes used Dr. Segina's user name and password to gain access to Health First's computing environment, including Dr. Segina's e-mails.   Mr. Siptroth will also testify that leaving a computer or software application unattended is in violation of Section 111.A.1.c of the system access policy of Health First.   He will also testify that, because Dr. Segina's e-mail was unattended, was not properly secured and provided other users open access to the e-mail, as a result, Dr. Segina's computer use was not in compliance with the Health First policies.

Doc. No. 161, at 8.   It appears that Dr. Hynes intended to rely on Mr. Siptroth's opinion to establish lack of intent on both the CFAA and the SCA claims.   Doc. No. 164, at 20, 22.   Because Dr. Hynes intended to rely upon Mr. Siptroth's testimony at trial, it was reasonable for counsel for Health First to review his opinion and to depose him.

Health First seeks fees in this category for work performed in February 2012.   Doc. No. 218-1, at 3.   The following hours of work fall within this category:

| PROFESSIONAL | HOURS WORKED | HOURLY RATE | FEE |
|---|---|---|---|
| Hoffman | 0.80 | $385.00 | $308.00 |
| MacKenzie | 14.3 | $385.00 | $5,505.50 |
| Cox | 1.10 | $255.00 | $280.50 |
| **TOTAL FEES:** | | | $6,094.00 |

Doc. No. 218-3, at 97-115.   There is an insufficient showing why 0.20 hours of work by Attorney McKown on 02/15/12 reviewing Mr. Siptroth's expert report was necessary in light of Attorney

MacKenzie taking Mr. Siptroth's deposition.   Doc. No. 218-3, at 97.   Therefore, I recommend that the Court not award fees for this work.   Because Attorney Hoffman was the supervising attorney, it was appropriate for him to review the expert report and the summary prepared by Attorney Cox.

Therefore, I recommend that the Court find that Health First reasonably incurred $6,094.00 in fees in this category of work.

        d.    <u>Work Performed Regarding Dr. Hynes' Motion for Summary Judgment</u>.

Health First also seeks fees for work performed in April, July and August 2012, responding to Dr. Hynes' motion for summary judgment and his motion to file his motion for summary judgment out-of-time.   Doc. No. 218-1, at 3.   In the summary judgment motion, Dr. Hynes disputed Health First's standing to bring claims under the CFAA and the SCA, among other arguments.   Doc. No. 164, at 6.   Because it was required to respond to these motions, Health First should be compensated for the work reasonably performed in preparing its responses.

The following hours of work fall within this category:

| PROFESSIONAL | HOURS WORKED | HOURLY RATE | FEES |
|---|---|---|---|
| Hoffman | 6.3 | $385.00 | $2,425.50 |
| MacKenzie | 7.6 | $385.00 | $2,926.00 |
| Cox | 38.7 | $255.00 | $9,868.50 |
| **TOTAL FEES:** | | | $15,220.00 |

Doc. No. 218-3, at 117-49.

I have not included in this category the following work:

| DATE | PROFESSIONAL | HOURS WORKED | HOURLY RATE | TASK PERFORMED |
|---|---|---|---|---|
| 07/30/12 | Hoffman | 0.20 | $385.00 | Telephone conference with D. MacKenzie regarding possible Rule 11 letter and motion to A. Whitehead regarding false assertion that Dr. Hynes asserted 5th Amendment Privilege at his deposition. |
| 07/30/12 | Hoffman | 0.10 | $385.00 | Exchange e-mail correspondence with co-counsel regarding false statement in Dr. Hynes' reply memo. |
| 07/31/12 | MacKenzie | 1.10 | $385.00 | Receive, review and respond to electronic letter form D. Mathias[5] re Hynes' reply (.1); Receive and review several electronic letters from K. Cox re same (.1); Draft and review with further and final edits proposed letter to A. Whitehead re Fifth Amendment representations, Rule 11 notice, send via electronic mail to team for review and consideration (.9). |
| 07/31/12 | Hoffman | 0.1 | $385.00 | Review and comment on draft correspondence to A. Whitehead regarding false statement in Reply Memo. |
| 08/14/12 | Hoffman | 0.10 | $385.00 | Review proposed correspondence to A. Whitehead and send comments to co-counsel. |

Doc. No. 218-3, at 146-47, 149.   Ultimately, no Rule 11 motion was filed, and Dr. Hynes did not amend his reply memorandum.   Therefore, discussions regarding a Rule 11 letter are not properly compensable in this category of work.

In sum, I recommend that the Court find that $15,220.00 in fees were reasonably incurred for work performed in connection with Dr. Hynes' motion for summary judgment.

---

[5] Mr. Mathias is a representative of Health First.   Doc. No. 218-3, at 2.

e.    Work Performed Regarding Dr. Hynes' Motion for Sanctions Based on Alleged Spoliation of Evidence (Doc. No. 103).

On September 5, 2012, Dr. Hynes filed a motion for sanctions due to alleged spoliation of evidence (the "Spoliation Motion") in which he asked that the Court strike the complaint or, alternatively, deem Dr. Hynes' statements regarding the events underlying the lawsuit to be true. He alleged that Health First failed to preserve information electronically stored on its server(s). Doc. No. 103.   Health First responded to the Spoliation Motion on September 24, 2012.   Doc. No. 113.   The Court denied the Spoliation Motion on May 14, 2014, finding that Dr. Hynes had not established the necessary elements of spoliation.   Doc. No. 147.

Health First seeks fees for work performed in August 2012, September 2012, and May 2014 in connection with Dr. Hynes' Spoliation Motion.   Doc. No. 218-1, at 3.   The time entries regarding the Spoliation Motion often include time spent on other tasks, such as responding to the motion for disqualification and related issues.   *See, e.g.*, Doc. No. 218-3, at 169-76.   When the time entries assigned hours to each task, I have included in the following chart only the time attributable to work on the Spoliation Motion.[6]   To the extent that time entries during this period record work performed on issues other than the Spoliation Motion or are too vague to determine the reason the work was performed, I have not included those hours in the following chart:

| PROFESSIONAL | HOURS WORKED | HOURLY RATE | FEES |
|---|---|---|---|
| Hoffman | 3.6 | $385.00 | $1,386.00 |
| MacKenzie | 1.3 | $385.00 | $500.50 |
| Cox | 48.2 | $255.00 | $12,291.00 |

---

[6] A list of time entries allowed, disallowed, or reduced for this category is contained in the Appendix to this Report and Recommendation.   I include an appendix only for this category of work because, due to the significant overlap of work on the Spoliation Motion, the renewed motion in limine and the motion to disqualify counsel and related work, an appendix appears to be necessary to show what time was worked on the Spoliation Motion.

| TOTAL FEES: | $14,177.50 |
|---|---|

Doc. No. 218-3, at 150-74, 208.     The total amount of fees for this work is substantial for responding to a motion in which Dr. Hynes did not establish any of the elements of spoliation. Nevertheless, because Dr. Hynes sought essentially terminating sanctions, Health First cannot be faulted for devoting time to preparing a thorough response supported by evidence and legal authority.   Therefore, I recommend that that Court find that Health First reasonably incurred fees in the amount of $14,177.50 for responding to the Spoliation Motion.

        f.    <u>Work Performed Regarding Dr. Hynes' Renewed Motion in Limine (Doc. No. 120)</u>.

On October 2, 2012, Dr. Hynes filed a renewed motion in limine, Doc. No. 120, to which Health First responded on May 12, 2014, Doc. No. 144, after the stay of the litigation was lifted. Health First seeks fees for work performed in August 2012, September 2012, January 2013 and May 2014.   However, because the renewed motion in limine was not filed until October 2, 2012, work before that date necessarily was not directed to the renewed motion.[7]   The work performed in connection with the renewed motion in limine is as follows:

| PROFESSIONAL | HOURS WORKED | HOURLY RATE | FEE |
|---|---|---|---|
| MacKenzie | 1.8 | $385.00 | $693.00 |
| Cox | 12.2 | $255.00 | $3,111.00 |
| TOTAL FEES: | | | $3,804.00 |

Doc. No. 218-3, at 150-209.

---

[7] Dr. Hynes filed earlier motions in limine, Doc. Nos. 101 and 102, which were stricken by the Court, Doc. No. 105.   Because Health First refers in its description of this category of work specifically to the single renewed motion in limine (Doc. No. 120), I have not included work performed regarding the original motions in limine.   Doc. No. 217, at 7.

Accordingly, I recommend that the Court find that Health First reasonably incurred $3,804.00 in fees in connection with responding to Dr. Hynes' renewed motion in limine (Doc. No. 120).

g.      Work Performed Related to Dr. Hynes' Motion for Disqualification (Doc. No. 104) and the Resulting Stay.

On September 5, 2012, Dr. Hynes filed a motion to disqualify Holland & Knight, counsel for Health First, based on counsel's review of allegedly privileged documents in related state court proceedings.   Doc. No. 104.   Neither counsel for Dr. Hynes nor counsel for Health First promptly advised the Court that the Honorable Charles Holcomb, a Circuit Court judge in one of the state court proceedings, held an evidentiary hearing on a similar motion to disqualify filed in his case. Counsel confirmed in a discovery hearing held on October 2, 2012, that Judge Holcomb was resolving the issues underlying the motion to disqualify filed in this case and related privilege issues. Doc. No. 121 (digital recording).   On October 3, 2012, after the Court learned of the proceedings before Judge Holcomb, the then-presiding District Judge stayed the litigation pending rulings from Judge Holcomb.   Doc. No. 123.   Counsel for Health First fought the stay, filing a motion for reconsideration.   Doc. Nos. 125, 126.   Counsel for Health First filed motions requesting that this Court rule on the privilege issues that Judge Holcomb had under consideration and ultimately resolved (Doc. Nos. 115, 146).   After Judge Holcomb denied the motion to disqualify, Dr. Hynes withdrew his motion to disqualify Holland & Knight filed in this case.   Doc. Nos. 134-1, 134-2, 134-3, 141.

Based on this history, the extensive work Holland & Knight performed responding to the motion to disqualify in this case, including filing a motion for reconsideration and motions to determine documents not to be privileged, was unnecessary and, therefore, excessive.   Had counsel simply informed the Court that Judge Holcomb was resolving the underlying issues, the Court would

have stayed the case without the need for Health First to file its response to the motion to disqualify and related motions.   For these reasons, I recommend that the Court find that Health First only reasonably incurred fees in the total amount of $1,232.00 related to the motion to disqualify by preparing for and attending a hearing before me in which counsel discussed the proceedings before Judge Holcomb, as follows:

| DATE | PROFESSIONAL | HOURS WORKED | HOURLY RATE | FEE |
|------|--------------|--------------|-------------|-----|
| 10/02/12 | MacKenzie | 1.90[8] | $385.00 | $731.50 |
| 10/02/12 | Hoffman | 1.30 | $385.00 | $500.50 |
| **TOTAL FEES:** | | | | $1,232.00 |

Doc. No. 218-3, at 179.[9]

When the case was stayed, the Court required the parties to file periodic status reports on Judge Holcomb's rulings.   Doc. No. 123.   Counsel for Health First also reasonably worked on a motion to lift the stay after Judge Holcomb entered his ruling, because counsel for Dr. Hynes opposed lifting the stay.   Doc. No. 134, at 5.   The following time was worked to comply with the Court's orders:

---

[8]   This time does not include 0.4 hours Attorney MacKenzie recorded on October 2, 2012, for follow-up conversations after the hearing.   Doc. No. 218-3, at 179.

[9]   This recommendation includes disallowance of fees for Health First's work requesting a Rule 16 conference to discuss resolution of the motion to disqualify and attending that conference.   Doc. No. 218-3, at 199.

| PROFESSIONAL | HOURS WORKED | HOURLY RATE | FEE |
|---|---|---|---|
| Hoffman | 7.5 | $385.00 | $2,887.50 |
| MacKenzie | 1.2 | $385.00 | $462.00 |
| McKown | 2.4 | $355.00 | $852.00 |
| Cox | 22.3 | $255.00 | $5,686.50 |
| **TOTAL FEES:** | | | $9,888.00[10] |

Doc. No. 218-3, at 180-99.   The stay was lifted on April 9, 2014, and, accordingly, hours worked on and after that date are not compensable fees in this category.   Doc. No. 139.

In sum, in this category I recommend that the Court find that Health First reasonably incurred $11,120.00 ($1,232.00 + $9,888.00) in fees in this category of work.

h.     <u>Work Performed Preparing For and Attending Trial</u>.[11]

In this category, Health First requests fees for the work its counsel performed beginning in June 2014, after the stay was lifted, for the purpose for preparing for trial on all issues and attending trial.   Doc. No. 217, at 8; Doc. No. 218-1, at 3.   These hours are as follows:

---

[10] I have not included in this time work performed by Attorney Borucke on January 15, 2013, and March 5, 2013, reviewing status reports because it appears that he made no substantive contribution to the work.

[11] Dr. Hynes contends that Health First waived its right to seek fees in this category because it did not request these fees in its initial fee motion.   Doc. No. 219, at 12.   Dr. Hynes did not cite to any legal authority supporting his waiver argument.   I note that the Court expressly gave Health First leave to file a renewed motion after the Eleventh Circuit resolved the appeal rather than simply permitting Health First to refile the original motion.   Doc. No. 201.   For these reasons, Dr. Hynes' waiver argument is not well taken.

| PROFESSIONAL | HOURS WORKED | HOURLY RATE | FEE |
|---|---|---|---|
| Hoffman | 137.3 | $385.00 | $52,860.50 |
| MacKenzie | 21.6 | $385.00 | $8,316.00 |
| McKown | 51.1 | $355.00 | $18,140.50 |
| Cox | 125.9 | $255.00 | $32,104.50 |
| Mears | 36.6 | $255.00 | $9,333.00 |
| Hatch | 89.4 | $160.00 | $14,304.00 |
| **TOTAL FEES:** | | | $135,058.00 |

Doc. No. 218-3, at 214-63.

I recommend that the Court find that the hours worked as reflected in the foregoing table were reasonable. Nevertheless, Dr. Hynes' objection that Health First has not apportioned the work performed to include only that needed to prove damages on the SCA claim is, in my view, well taken. The District Judge who presided over the bench trial in this case is in the best position, in the exercise of his discretion, to determine whether time in this category should be reduced, and to what extent, to address only the work needed on the SCA claim, which is the only claim that provides for an award of attorneys' fees. Therefore, while I recommend that the Court find that Health First reasonably incurred $135,058.00 in fees for its counsel's preparation for and prosecution of its claims at trial, I further recommend that the Court consider reducing the fees, in the exercise of discretion, to account for work that was not necessarily performed to prove the SCA damages claim at trial.

**3.      Adjustment to the Lodestar Attorneys' Fees**.

Dr. Hynes argues that the Court should also adjust the lodestar attorneys' fees downward in light of the consideration of the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488

F.2d 714 (5th Cir. 1974).   Doc. No. 231, at 10-14.   These factors and their application to this case are as follows:

a.      The time and labor required.

As discussed above, much of the time and labor required by counsel for Health First in this case was in response to discovery requests made by and motions and other papers served by Dr. Hynes.   Trial of the case was also required because the case was not settled.   Because the Court will determine the reasonable number of hours expended by counsel for Health First, the first *Johnson* factor is adequately addressed in the lodestar attorneys' fee calculation.

b.      The novelty and difficulty of the questions.

The claims asserted by Health First were not issues of first impression nor were they particularly difficult to establish.   The Court's decision in this case did not create new law.   *See Johnson*, 488 F.2d at 718.   Accordingly, this factor is neutral.

c.      The skill required to perform the legal service properly.

In light of the contentious nature of this litigation, and the substantial technical issues regarding collection and production of electronically stored information, Health First needed skilled counsel to address the numerous issues raised by Dr. Hynes.   There were, however, substantial and unnecessary duplications of effort by Health First's counsel at almost every stage of the litigation. *See, e.g.,* Doc. No. 218-3; Doc. No. 219, at 14-15.   Therefore, I recommend that the Court find that this *Johnson* factor weighs in favor of a reduction in the lodestar attorneys' fees.

d.      The preclusion of other employment by the attorney due to acceptance of the case.

Health First offered no evidence that Holland & Knight was precluded from other employment as a result of representing Health First in this case.   This factor is, therefore, neutral.

e. <u>The customary fee</u>.

The fee expert for Dr. Hynes opines that this factor is neutral based on the lodestar attorneys' fee calculation.   Doc. No. 231, at 12.

f. <u>Whether the fee is fixed or contingent</u>.

The record reflects that Health First paid the fees billed by its counsel.[12]   Because Health First will not recover a fee greater than it agreed to pay, this factor is neutral.

g. <u>Time limitations imposed by the client or the circumstances</u>.

Health First has not established that it was under significant time constraints in this litigation. Therefore, this factor is neutral.

h. <u>The amount involved and the results obtained</u>.

Health First recovered "make whole" damages under the CFAA and it also recovered statutory damages under the SCA.   Dr. Hynes argues that because the "make whole" damages were awarded under the CFAA, the results Health First obtained under the SCA were minimal.   I am not persuaded that the manner in which the Court allocated damages among the causes of action establishes that the results obtained under the SCA claim were minimal.   *See generally Cheng*, 2014 WL 882796, at *2.   Accordingly, this factor is neutral.

i. <u>The experience, reputation and ability of the attorneys</u>.

This factor is adequately addressed by the lodestar attorneys' fees.   Therefore, it is neutral.

j. <u>The undesirability of the case</u>.

Health First has not established that the case was undesirable.   Therefore, this factor is neutral.

---

[12] Attorney Hoffman attests that he reviewed attorney time records paid by Health First.   Doc. No. 218, at 2.

k.    The nature and length of the professional relationship with the client.

The numerous cases in which Holland & Knights represents Health First shows that there was a substantial relationship between counsel and the client.   There is no evidence, however, that Holland & Knight discounted its fee based on this relationship.[13]   *Johnson*, 488 F.2d at 719. Therefore, this factor is neutral.

l.    Awards in similar cases.

Neither Health First nor Dr. Hynes offered evidence of fee awards in similar litigation.   I note that in *Cheng*, the court awarded Plaintiff $241,073.03 in attorneys' fees for litigating an SCA case that resolved at summary judgment.   *Cheng*, 2014 WL 882796, at *5.   Therefore, this factor is neutral.

On balance, I recommend that the Court find that the *Johnson* factors support a reduction in the lodestar attorneys' fee to account for the duplication of effort arising from counsel for Health First taking a team approach on most of the issues in the case.   While I recognize that contributions from each of the lawyers likely were considered by members of the team to be useful, the case could have been thoroughly litigated without the extensive review and discussion among the team of lawyers assigned to the case as reflected in the time sheets.

**4.    Lodestar Attorneys' Fee**.

In sum, I recommend that the Court find that the lodestar attorneys' fees are $219,822.00. I further recommend that the Court reduce this lodestar attorneys' fees, in the exercise of discretion, to account for work performed that was not necessary for litigation of the SCA claim and for the

---

[13]  The amount actually charged to Health First has been redacted from the time sheets filed with the Court.   If Holland & Knight did discount its fees in the invoices submitted to Health First, it must advise the Court of the amount of the discount within the time to file objections to this Report and Recommendation.

duplication of work by Health First's team of attorneys.   The Court may use an across-the-board reduction.[14]   *Loranger*, 10 F.3d at 783.

      B.     *Litigation Expenses*.

      As noted above, the SCA provides for an award of "other litigation costs reasonably incurred."  18 U.S.C. § 2707(b)(3).   Health First seeks its litigation expenses in only three categories:   (1) Health First's expert costs related to Dr. Hynes' request to inspect Health First's computer equipment; (2) fees charged by Dr. Hynes' computer forensic expert for taking his deposition; and (3) fees of its fee expert, Attorney Bedill.   Doc. No. 217, at 11-12.    I will discuss each category in turn:

      **1.**      **Costs of Adam Sharp, Health First's Computer Forensic Expert**.

      Health First states as follows:

> The only costs paid to Mr. Sharp being claimed in this motion . . . are related to services he provided in connection with Dr. Hynes' request for his own expert (Kyle Siptroth) to inspect the Health First[] computer servers and the work stations from the physician's lounge where he accessed and printed Dr. Segina's emails.  Mr. Sharp provided consulting services to Health First on the risks associated with an inspection of the servers, advised on the best practices to conduct an inspection of the workstations from a forensic perspective, reviewed data from the specific station used by Dr. Hynes to provide to Dr. Hynes' expert, facilitated the use of a forensic image of the hard drive for the inspection, and traveled to and monitored the actual inspection by Mr. Siptroth.

Doc. No. 217, at 12 (citation omitted).

      Dr. Hynes argues that none of Mr. Sharp's work is compensable because the inspection of Health First's computer equipment related only to the CFAA claim.  Doc. No. 231, at 14.  This argument is not persuasive because, among other things, Dr. Hynes argued that the inspections were

---

[14] For example, if the Court determines that a 40% reduction in the lodestar attorneys' fees award is reasonable, it would reduce the total fee award for work in this Court to $131,893.20 (lodestar fee of $219,822.00 x .60).

necessary to determine whether Dr. Hynes intentionally obtained unauthorized access to the email account of another physician, Doc. No. 103-4, at 1, which was an issue he raised in defense of the SCA claim, Doc. No. 162, at 2.

Health First submitted the invoice and billing statement from E-Hounds, Inc., Mr. Sharp's company, for this work in the total amount of $4,532.00.  Doc. No. 218-4, at 2.  Mr. Sharp charged $300.00 per hour for his work, which is reasonable in the absence of objection.  I note, however, that this invoice includes 0.50 hours at $300.00 per hour for Mr. Sharp's work on 02/15/2012 for a "Conf Call KC Review opposing report."  *Id.*  This work does not fall within the work Health First described above.  Therefore, I recommend that Mr. Sharp's bill be reduced by $150.00, and that the Court award Health First $4,382.00 in litigation expenses for the work of Mr. Sharp.

### 2. Fee Charged by Dr. Hynes' Computer Forensic Expert for Attending His Deposition.

As discussed above, Health First reasonably took the deposition of Mr. Siptroth, Dr. Hynes' computer forensic expert.   The invoices from AgileTek, Mr. Siptroth's company, reflect charges of $250.00 per hour for travel to and from the deposition and charges of $350.00 per hour for his time attending the deposition, for a total of $2,300.00, as well as other charges for which Health First does not seek reimbursement in the present motion.  Doc. No. 218-4, at 4.   Health First seeks litigation expenses in the amount of $2,260.00, because the Court has already taxed $40.00 in a witness fee paid to Mr. Siptroth.  Doc. No. 217, at 13.   Because these are charges billed by Dr. Hynes' expert, I recommend that the Court award Health First litigation expenses in this category in the amount of $2,260.00.

**3.** **Fee Charged by Attorney Bedill, Health First's Fee Expert**.

Attorney Bedill charged Health First $5,390.00 for preparing his declaration in support of the initial motion for attorneys' fees, Doc. No. 195-1, at 9, and an additional $1,365.00 for preparing his second declaration in support of the renewed motion for attorneys' fees, Doc. No. 217-1, at 10, for a total of $6,755.00.   This is less than the amount Attorney Oliver charged Dr. Hynes for preparing his declaration in response to the renewed motion for attorneys' fees.   Doc. No. 231, at 16.   Fee experts provide great assistance to the Court in resolving motions for an award of attorneys' fees and litigation expenses especially in cases of this complexity.   Therefore, I recommend that the Court award Health First $6,755.00 in litigation expenses for the work of Attorney Bedill.

**4.** **Total Litigation Expenses**.

In sum, I recommend that the Court award Health First a total of $13,397.00 in litigation expenses.

**III.** **RECOMMENDATION**.

For the reasons stated above, I respectfully recommend that the Court do the following:

A. **GRANT in part and DENY in part** Plaintiff's Renewed Motion to Determine Amount and Award [of] Reasonable Attorney's Fees and Non-Taxable Costs (Doc. No. 217);

B. **AWARD** Health First attorneys' fees in a reasonable amount based on the lodestar attorney's fee as may be further adjusted to account for litigation of issues other than the SCA claim and for duplication of effort by counsel for Health First; and,

C.    **AWARD** Health First litigation costs in the amount of $13,397.00.[15]

**<u>NOTICE TO PARTIES</u>**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.   A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on June 27, 2016.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy

---

[15] A separate judgment is not required for resolution of a motion for attorneys' fees, including nontaxable costs.  Fed. R. Civ. P. 58.  Health First may, however, request that the judgment in this case again be amended to include the attorneys' fees and nontaxable costs awarded by the Court.

## APPENDIX.

I.    **WORK PERFORMED REGARDING DR. HYNES' MOTION FOR SANCTIONS BASED ON ALLEGED SPOLIATION OF EVIDENCE (DOC. NO. 103).**

   A.    *Allowed Time.*

| DATE | PROFESSIONAL | HOURS WORKED | TASK PERFORMED | NOTES |
|------|--------------|--------------|----------------|-------|
| 08/31/12 | Hoffman | 0.2 | Review incoming Motions in Limine, Motion for Sanctions and Motion to Disqualify. | Block billing entry for which 0.2 hours is allowed for review of the Spoliation Motion. |
| 09/03/12 | Cox | 0.5 | [C]ontinue to review background documents for purposes of response to motion for sanctions based on spoliation (.5). | Other parts of the time entry are not work performed on Spoliation Motion. |
| 09/04/12 | Hoffman | 0.30 | Review e-mail correspondence from K. Cox regarding Response to spoliation motion and discuss response. | |
| 09/05/12 | Cox | 0.5 | Review motions in limine and for spoliation and continue to analyze arguments in defense of same [0.50]. . . . | Block billing entry for which is 0.50 hours allocated to Spoliation Motion. |
| 09/05/12 | Hoffman | 0.20 | Internal conference responses to Motion with K. Cox regarding for Sanctions. | |
| 09/05/12 | Hoffman | 0.20 | Review incoming motions to disqualify, sanctions and in limine as filed. | Block billing entry for which 0.20 hours is allocated to Spoliation Motion. |
| 09/06/12 | Cox | 0.80 | Review background correspondence, hearing transcript, orders and other materials addressing ESI preservation early in litigation, and forward to | |

| | | | | |
|---|---|---|---|---|
| | | | J. Hoffman, for purposes of background in addressing motion for spoliation sanctions. | |
| 09/13/12 | Cox | 2.40 | Continue to prepare response to motion for spoliation (2.4) . . . . | |
| 09/14/12 | Cox | 2.50 | [C]ontinue to prepare response to motion for spoliation and review underlying materials related to same (2.5) . . . . | Other parts of this time entry are not work performed on Spoliation Motion. |
| 09/15/12 | Cox | 7.10 | Continue to prepare response to motion for sanctions due to alleged spoliation of electronically stored information. | |
| 09/16/12 | Cox | 9.50 | Continue to prepare response to motion for sanctions based on alleged spoliation of electronically stored information. | |
| 09/17/12 | Cox | 7.90 | Continue to prepare response to motion for sanction based on alleged spoliation of ESI evidence (4.1); call with F. Waszmer re IT factual issues underlying same (.3); . . . make additional revisions to draft response to motion for sanctions based on spoliation based on comments from F. Waszmer and addition of exhibits, and send to J. Hoffman for review (3 5). | Other parts of this time entry are not work performed on Spoliation Motion. |
| 09/19/12 | Cox | 1.30 | Confer with A. Sharp re issues related to motion for sanctions based on spoliation of ESI (.4); prepare draft declaration for A. Sharp re same (.4); . . . finish preparing draft declaration for F. Waszmer re ESI | Other parts of the time entry are not work performed on Spoliation Motion. |

| | | | | | |
|---|---|---|---|---|---|
| | | | | preservation issues and forward same for review (.5) . . . . | |
| 09/20/12 | Cox | | 1.80 | [S]end draft declarations for A. Sharp and F. Waszmer, re motion for spoliation sanctions, to J. Hoffman for review (.1); finalize A. Sharp declaration (.2); compare issues in A. Sharp declaration with testimony in K. Siptroth deposition and statements in K. Siptroth expert report (1.3); emails with M. McKown re deadline for responses to motion for disqualification and motion for spoliation sanctions [0.20] . . . . | Block billing entry from which 0.2 is allocated to work on Spoliation Motion; other parts of this time entry are not work performed on Spoliation Motion. |
| 09/21/12 | Cox | | 3.30 | [C]onfer further with F. Waszmer re declaration and finalize same for purposes of response to motion for spoliation sanctions (.5); . . . revise response to motion for sanctions based on ESI spoliation and circulate for review (2.8) . . . . | Other parts of this time entry are not work performed on Spoliation Motion. |
| 09/23/12 | Cox | | 6.20 | Revise response to motion for sanctions based on spoliation, including revisions based on comments from J. Hoffman and D. MacKenzie, and based on confirming references to exhibits and citations to authority (6.2) . . . . | Other parts of this time entry are not work performed on Spoliation Motion. |
| 09/23/12 | MacKenzie | | 1.30 | Draft and review with edits proposed response to motion re spoliation, send via electronic mail for review and consideration. | |

| 09/23/12 | Hoffman | 1.80 | Review and revise draft Memo in Opposition to Defendant's Spoliation Motion and send comments to co-counsel. | |
| 09/23/12 | Hoffman | 0.20 | Review D. MacKenzie edits to Memo in Opposition to Spoliation Motion. | |
| 09/24/12 | Cox | 4.4 | [F]inish compiling exhibits for response to motion for disqualification and for response to motion for sanctions based on spoliation . . . ; review, revise and finalize each response for purposes of filing (4.4). | Block billing entry for which 4.4 hours is allocated to Spoliation Motion. |
| 09/24/12 | Hoffman | 0.30 | Review and make final revisions to Response to Motion for Sanctions (Spoliation). | |
| 09/24/12 | Hoffman | 0.10 | Internal conference with K. Cox regarding final edits to Memo in Opposition to Motion for Sanctions (spoliation). | |
| 05/14/14 | Hoffman | 0.30 | Review incoming Order Denying Dr. Hynes' Motion for Sanctions for Spoliation and exchange e-mail correspondence with co-counsel regarding Order. | |

Doc. No. 218-3, at 150-76, 209.

B.      *Disallowed and Reduced Time.*

| DATE | PROFESSIONAL | HOURS WORKED | TASK PERFORMED | REASON EXCLUDED |
|---|---|---|---|---|
| 08/31/12 | Cox | 4.60 | Begin review and analysis of multiple draft motions provided by opposing counsel in preparation for good faith conference, and begin drafting responses to certain arguments in same. | Before Spoliation Motion filed; vague because no indication which "draft motions" were being reviewed. |
| 05/14/14 | McKown | 0.20 | Receive and review order denying Dr. Hynes' Motion for Spoliation and confer with team. | Duplicative and excessive, particularly in light of time awarded for Attorney Hoffman's review of the same order. |
| 05/14/14 | MacKenzie | 0.50 | Review and analyze order denying Dr. Hynes' motion for spo[li]ation[; r]eceive, review and respond to several electronic letters and messages from team re same, status and strategy (.5). | Duplicative and excessive, particularly in light of time awarded for Attorney Hoffman's review of the same order. |
| 05/14/14 | Cox | 0.60 | Review and analyze order denying motion for sanctions based on spoliation, and review and exchange internal communications re implications of same | Duplicative and excessive, particularly in light of time awarded for Attorney Hoffman's review of the same order |

Doc. No. 218-3, at 150, 208-09.